IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       *Plaintiff,*<br>  v.<br><br>WISCONSIN ELECTIONS<br>COMMISSION, et al.,<br><br><br> *Defendants.* | 3:25-cv-1036-jdp |

**SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANTS COMMON
CAUSE, MELISSA ADAMS,
<u>AMANDA MAKULEC, AND JAIME RIEFER</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    I.   The privacy and voting rights of Common Cause Intervenors are at stake in this litigation. ........................................................................................... 2

    II.  Public reporting and judicially noticeable documents make clear that Plaintiff's justification for its demand for Wisconsin's unredacted voter file is pretextual. ..................................................................................... 3

ARGUMENT ....................................................................................................... 9

    I.   Plaintiff's request does not comply with the basis-and-purpose requirement of the CRA because it is pretextual. .................................................... 9

    II.  Plaintiff's requested relief, if granted, would violate the federal Privacy Act. ............................................................................................................ 13

    III. Plaintiff's demand is invalid also because it does not allow for redactions and modifications to protect the privacy and constitutional rights of voters. 15

    IV. The United States' Motion to Compel should be denied because Plaintiff is not entitled to summary disposition of its CRA claim. .................................. 17

    V.  This Court should dismiss this action with prejudice because any amendment would be futile. ............................................................................ 17

CONCLUSION ................................................................................................... 19

## INTRODUCTION

Consistent with this Court's January 22, 2026 order, Dkt. 53, Intervenor-Defendants Common Cause, Melissa Adams, Amanda Makulec, and Jaime Riefer (collectively, the "Common Cause Intervenors") provide this supplemental brief in support of the motions to dismiss and in opposition to Plaintiff's motion to compel filed by the Common Cause Intervenors and the Wisconsin Election Commission ("WEC"), Dkt. 56–58. This Court has ordered Common Cause Intervenors to "raise only additional arguments not raised by the Wisconsin Elections Commission without re-hashing arguments already made." Dkt. 53.[1]

WEC's memorandum provides many strong and independent bases for denial of Plaintiff's motion to compel and for dismissal of Plaintiff's complaint in this case. *See* Dkt. 58 ("WEC Br."). Here, Common Cause Intervenors adopt them by reference and incorporate them into this brief as support for their motion to dismiss and brief in opposition to Plaintiff's motion to compel. Common Cause Intervenors provide this separate brief for three main reasons. ***First***, Common Cause Intervenors represent the perspective of the people whose interests and rights are most squarely at issue in this case: everyday Wisconsin voters whose sensitive, personal information and constitutional rights are at stake. ***Second***, Common Cause

---

[1] Because the Common Cause Intervenors have been granted party status and are now defendants in this action, *see* Dkt. 53, they have an obligation under Fed. R. Civ. P. 12(a), (b) to file either an answer to the complaint or a motion permitted by Rule 12. Accordingly, they are filing a separate motion to dismiss to satisfy their obligation under Rule 12 but are still complying with the Court's instruction not to re-hash arguments already raised by WEC.

Intervenors note several significant updates since the WEC filed its brief in this case, which in particular bear on the United States' basis and purpose for its unprecedented and unlawful demand for Wisconsin's unredacted voter file. ***Third***, Common Cause Intervenors offer new arguments, and provide more analysis and detail to more fully develop arguments only briefly discussed in WEC's brief, that counsel in favor of dismissal.

## BACKGROUND

**I.    The privacy and voting rights of Common Cause Intervenors are at stake in this litigation.**

If Plaintiff's requested relief is granted, it will do great harm to the privacy rights and constitutional right to vote of Common Cause Intervenors and their members. Intervenor-Defendant Common Cause, a nonprofit organization committed to ensuring all eligible Wisconsin voters can register and exercise their right to vote at each election, has more than 9,900 members in Wisconsin. Dkt. 35 ¶¶ 4–7. These members include voters who live throughout the state and whose sensitive personal information would be unlawfully released if Plaintiff's relief is granted, which would invade those members' privacy and chill their participation in the electoral process. *Id.* ¶¶ 6, 10.

Individual Common Cause Intervenor-Defendants Melissa Adams, Amanda Makulec, and Jaime Riefer are registered Wisconsin voters who are at particular risk of being caught up in Plaintiff's efforts to remove voters from voter rolls because each has recently moved to or within Wisconsin and has updated their voter registration accordingly—which makes it likelier to lead to an incorrect flag

2

that they have a "duplicate" record in the state voter lists that Plaintiff seeks to collect. Dkt. 36 ¶¶ 2–4; Dkt. 37 ¶¶ 2–3; Dkt. 38 ¶¶ 2–4. As a human resources professional, Ms. Adams understands that data migration is imperfect, and she is deeply concerned that the United States' efforts to collect sensitive voter information *en masse* will detrimentally impact her and other eligible Wisconsinites' ability to exercise their right to vote. Dkt. 36 ¶¶ 6–7. Likewise, based on Ms. Makulec's professional specialization in public health data, she believes that forcing the State of Wisconsin to share individuals' unique identifiers and other sensitive personal information with the federal government—an entity that has access to other types of data about Americans, and can therefore use Wisconsin's voter data to create a bigger, broader picture about voters—will create serious privacy risks for her and other Wisconsin voters. Dkt. 37 ¶¶ 7–11; *see also* Dkt. 36 ¶ 8. And Ms. Riefer is concerned about the collection of her personal, sensitive data, including because of the risks of reprisal for engaging in political activity, and because errors in the data sought or the collection process could inaccurately flag voters as ineligible and prevent them from exercising their right to vote. Dkt. 38 ¶¶ 7–9.

II. **Public reporting and judicially noticeable documents make clear that Plaintiff's justification for its demand for Wisconsin's unredacted voter file is pretextual.**

In its Background section, WEC references an amicus brief filed on behalf of eighteen former United States Department of Justice ("US DOJ") employees who stated that the United States' true justification in seeking unredacted voter data from states across the country is not to ensure compliance with federal voting statutes, but instead "to create a national voter roll and enable the federal

3

government to conduct its own list maintenance." WEC Br. at 9 & n.11 (quoting Brief of Amici Curiae Former Employees of the U.S. Department of Justice at 2, *United States v. Weber*, No. 2:25-CV-09149 (Dec. 22, 2025)). Common Cause Intervenors write to provide more evidence that supports this argument.

According to extensive public reporting, US DOJ employees "have been clear that they are interested in a central, federal database of voter information."[2] US DOJ is coordinating these efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from US DOJ and DHS.[3] One article extensively quoted a recently departed lawyer from US DOJ's Civil Rights Division describing US DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.[4]

---

[2] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[3] *See also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

[4] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

4

According to additional public reporting, these efforts are being conducted with the involvement of election deniers within and outside the government who have previously sought to disenfranchise voters and overturn elections. Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple states and now serves as DHS's "deputy assistant secretary for election integrity."[5] Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who has, among other things, promoted the use of artificial intelligence to challenge registered voters.[6] These actors and their associates have previously sought to compel states to engage

---

[5] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR, Aug. 27, 2025, https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

[6] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell's organization had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

in aggressive purges of registered voters, and have abused voter data to make mass challenges to disenfranchise voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 599 n.1 & 600 (Pa. Commw. Ct. 2025) (dismissing as meritless a complaint brought by "PA Fair Elections," a group affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to HAVA).[7]

Further, public reporting reveals that as another part of its efforts to use novel and unspecified forms of data analysis to scrutinize state voter data and target voters for potential disenfranchisement, US DOJ last year asked staffers from the new "Department of Governmental Efficiency" ("DOGE") to identify noncitizens in state voter rolls by matching voter data with data from the Social Security Administration.[8] US DOJ officials have since claimed that "we've checked 47.5 million voter records" and found "several thousand noncitizens who are enrolled to

---

[7] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[8] *E.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ Focuses in on Voter Fraud, with a Murky Assist from DOGE*, NPR, May 22, 2025, https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting.

vote in federal elections," but public reporting indicates that these efforts are producing false positives—*i.e.*, that they are flagging U.S. citizens as being non-citizens who are ineligible to vote.[9]

A recent filing by US DOJ correcting misrepresentations in another federal court case further corroborates how United States officials have been seeking to use voter data in conjunction with DOGE-inspired data-matching and aggregation techniques and have been working with outside groups seeking to deny election results in those efforts. As detailed in the corrected filing, which was made on behalf of the U.S. Social Security Administration ("SSA"):

> [I]n March 2025, a political advocacy group contacted two members of SSA's DOGE Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH, Dkt. 197, at 5 (D. Md. Jan. 16, 2026); *see also* Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245. The filings, which do not specify the terms of the

---

[9] Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens*; see also* Harmeet K. Dhillon (@AAGDhillon), *Under @AGPamBondi, @CivilRights has been hard at work delivering results for America!*, X (Dec. 5, 2025, 1:02 PM) https://x.com/AAGDhillon/status/1997003629442519114.

"Voter Data Agreement" or the activities these DOGE actors or others undertook pursuant to it, also indicated that, around the same period, DOGE actors also improperly shared unknown amounts of social security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols." *Am. Fed'n of State, Cnty. & Mun. Emps.*, Dkt. 197, *supra*, at 6.

Extensive public reporting, as well as government documents created by the US DOJ and US DOJ's officials' own statements and admissions, thus indicate that the United States's aim in seeking sensitive voter data on millions of Americans is to turn states' own voter rolls into a tool for unlawfully and improperly mass-challenging voters and interfering with the democratic process in the states. Recent events have further highlighted the pretextual, and extremely abnormal, nature of the United States' request. On  January 24, 2026, Attorney General Pamela Bondi wrote a letter to Minnesota Governor Tim Walz, purporting to discuss DHS's "Operation Metro Surge" activities in the Twin Cities amidst ongoing violence against the civilian population there.[10] The letter purports to set out three actions that Minnesota—which is one of the states US DOJ has sued to try to obtain sensitive voter data—should take to "restore the rule of law, support ICE officers, and bring an end to the chaos in Minnesota," one of which is to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter

---

[10] *Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES, Jan. 24, 2026, https://perma.cc/H5GY-ZKBS ("Bondi Letter").

registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[11]

And earlier this month, President Trump announced his desire to "nationalize" elections in certain states: "The Republicans should say, 'We want to take over,'" he said. "We should take over the voting, the voting in at least many—15 places. The Republicans ought to nationalize the voting."[12]

## ARGUMENT

**I.    Plaintiff's request does not comply with the basis-and-purpose requirement of the CRA because it is pretextual.**

Plaintiff contends that its purpose for its unprecedented demand for Wisconsin's unredacted voter file was to ensure the state's "compliance with minimum standards and routine voter registration list maintenance" under the Help America Vote Act ("HAVA"). Eric Neff, *Email to Administrator Wolfe*, Dkt. 3-1 at 11 (Dec. 2, 2025); Dkt. 1. WEC—citing the United States' shifting rationales for demanding states' unredacted voter rolls, as well as the implausible theory on which it ultimately landed—argues that "US DOJ's proffered purpose is pretext" and that its "real purpose is to collect data for a federal voter database—as its own former employees have indicated." WEC Br. 46–47. Common Cause Intervenors write separately to (1) add further indicia of pretext, and (2) argue that even had the United States set forth some facially sufficient statement of the basis and

---

[11] Bondi Letter at 2, 3.

[12] Reid Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. TIMES, Feb. 2, 2026, https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

purpose for its request related to compliance with federal voting statutes—which it did not—the complaint should still be dismissed because the United States' stated reason for requesting the sensitive data of millions of Wisconsin voters is pretextual.

In connection with requests for statewide voter files, the United States is seeking States' approval of a memorandum of understanding. *See* Ex. 1, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU"). Far from indicating a purpose of ensuring "compliance with minimum standards" under HAVA, the MOU itself violates that statute and the National Voter Registration Act of 1993 ("NVRA").[13] MOU at 11. For one, the United States' MOU would place authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to HAVA's requirement that procedures for complying with the statute be "left to the discretion of the State." 52 U.S.C. § 21085; *see* MOU at 2, 5; *see also* 52 U.S.C. § 21083 (2), (4). In addition, the MOU's substantive terms would allow US DOJ to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a manner that would violate multiple protections of the NVRA, including the requirement to provide voters with notice prior to their removal from the rolls, and the firm bar against

---

[13] While "the NVRA does not apply to Wisconsin," *Pub. Interest Legal Found., Inc. v. Wolfe*, No. 24-cv-285-jdp, 2024 WL 4891940, at *3 (W.D. Wisc. Nov. 26, 2024), US DOJ has cited ensuring NVRA compliance as its purpose in its near-identical letters seeking unredacted voter files from other states across the country, *see, e.g.*, *United States v. Aguilar*, No. 3:25-cv-728, Dkt. 3-1 at 18 (D. Nev. Dec. 11, 2025); *United States v. DeMarinis*, No. 1:25-cv-3934, Dkt. 2-2 at 2, 17, 21 (D. Md. Dec. 1, 2025).

systematic voter removals within 90 days of an election. 52 U.S.C. § 20507. The MOU confirms that Plaintiff's stated purpose of ensuring compliance with federal voting statutes is not accurate or plausible.

Indeed, Title III's basis and purpose requirement is especially important here, where massive amounts of public reporting and public, judicially noticeable documents confirm that the United States' actual purpose is not to ensure compliance with federal voting statutes, but instead to build an unprecedented national voter file through novel, error-prone, DOGE-inspired forms of data-matching and then to use this tool to identify ostensibly ineligible voters and challenge their right to vote. *See supra* 4–9 & nn.2–12 (describing this evidence). As the federal court in California noted when it dismissed the United States' materially identical complaint with prejudice, "[i]t appears that the [US] DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *10 (C.D. Cal. Jan. 15, 2026). The court in *Weber* added:

> Congress passed the NVRA, Civil Rights Act, and HAVA to protect voting rights. If the [US] DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose.

*Id.* at *12.

Three days after WEC filed its brief in this case, a second federal court—this one in the District of Oregon—dismissed US DOJ's materially identical case without leave to amend. *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL

11

318402 (D. Or. Feb. 5, 2026). The court in *Oregon* found that "[t]he presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Id.* at *11. The court noted that despite the United States' "Oregon-specific concerns about voter list maintenance, Plaintiff has in fact requested the same voter registration lists in states across the country." *Id.* The same, of course, is true in Wisconsin. The court in *Oregon* also cited Attorney General Bondi's letter to Minnesota Governor Tim Walz, *see supra* at 8–9 & nn.10–11, finding that "[t]he context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Oregon*, 2026 WL 318402, at *11.

In its conclusion, the court in *Oregon* noted that given that "the Constitution specifically left the regulation and administration of elections to the states," Plaintiff's attempt to usurp states' role in election regulations "disturb[s] the framework of federalism envisioned and enshrined in our Constitution." *Id.* at *13. President Trump's statement three days prior calling for officials to "nationalize the voting" only confirms this as the true purpose behind US DOJ's many lawsuits in Wisconsin and beyond. *See supra* at 9 & n.12. That the evidence here overwhelmingly demonstrates that Plaintiff's supposed "purpose" for its demand was "contrived," *Weber*, 2026 WL 118807, at *10 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)), and Plaintiff's true purpose is in fact unlawful, are

12

independent grounds for holding that Plaintiff has failed to satisfy the CRA's basis-and-purpose requirements.

## II.    Plaintiff's requested relief, if granted, would violate the federal Privacy Act.

WEC correctly argues that "[t]he Privacy Act of 1974 . . . bars US DOJ's claim for Wisconsin voters' information." WEC Br. 41. Common Cause Intervenors write separately to expand this argument because (1) as a private organization and private individuals, they have an express cause of action to redress Privacy Act injuries, *see* 5 U.S.C. § 552a(g)(1)(D) ("Whenever any agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"), and (2) the First Amendment and privacy rights protected under the statute are personal to them and are gravely threatened in this case.

Congress passed the Privacy Act because "the right to privacy is a personal and fundamental right protected by the Constitution of the United States" and "the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies." Pub. L. No. 93-579, § 2 (1974). As the Seventh Circuit has found, the Privacy Act demonstrated "Congress['s] . . . particular concern with the Government's action in collecting information about citizens' exercise of their First Amendment rights." *Bassiouni v. F.B.I.*, 436 F.3d 712, 716 (7th Cir. 2006); *see also id.* at 718 ("[I]n enacting § 552a, Congress was motivated by a general concern with the potential for abuse if the Government is allowed to collect political dossiers about American citizens.").

13

Plaintiff's demand for sensitive, private data of every voter in the state is precisely what Congress passed the Privacy Act to prevent. As the court in *Weber* held, the Privacy Act barred US DOJ's materially identical request for California's unredacted voter file because "voter registration, participation in elections, as well as party affiliation are all types of political expression protected by the First Amendment." 2026 WL 118807, at *17; *see also generally Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020) (setting out the Supreme Court's "*Anderson-Burdick*" framework for evaluating whether state election laws violate the constitutional right to vote under the First and Fourteenth Amendments); *see also Krislov v. Rednour*, 226 F.3d 851, 859 (7th Cir. 2000) (similar).

Just as in *Weber*, "none of the exceptions that would allow for agencies to collect information falling under the First Amendment apply in the present case." 2026 WL 118807, at *17. Case law from this circuit and other courts of appeals makes clear that the Privacy Act's exception for "authorized law enforcement activity," 5 U.S.C. § 552a(e)(7), is a high bar to clear. In particular, it does not apply if the government seeks to "maintain these [materials] for possible future uses," *Becker v. I.R.S.*, 34 F.3d 398, 409 (7th Cir. 1994), or if the materials are in service of a mere "law enforcement *investigation*" as opposed to an "authorized law enforcement *activity*," *J. Roderick MacArthur Found. v. F.B.I.*, 102 F.3d 600, 602 (D.C. Cir. 1996) (emphasis added); *see also generally Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1294 (9th Cir. 2019) (holding law enforcement exception does not apply "if the record is not pertinent to ongoing authorized law

14

enforcement activity"). There is no indication of any such ongoing, authorized law enforcement activity anywhere in the record.

The individual Common Cause Intervenors have made clear how important their rights to vote and privacy are to them, and how US DOJ's demand for their personal voter data imperils these rights. *See* Dkt. 36 ¶¶ 5–9; Dkt. 37 ¶¶ 4, 6–13; Dkt. 38 ¶¶ 5–9. Common Cause Intervenors' declarations make clear how intertwined these two First Amendment-protected rights are: in order for Wisconsin voters to feel free and comfortable to exercise their fundamental right to vote, they must be free from intimidation and have assurance that their personal voter data is secure. *See generally id.*

### III. Plaintiff's demand is invalid also because it does not allow for redactions and modifications to protect the privacy and constitutional rights of voters.

WEC correctly argues that Wisconsin law requires the redaction of any sensitive voter records, *see* WEC Br. 34–36, and that Title III in no way preempts that state law requirement, *id.* at 36–40. Pre-emption in the Elections Clause context extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.* (*ITCA*), 570 U.S. 1, 9 (2013). Federal election laws only preempt state laws when there is an actual conflict, such that the two sets of laws cannot be read consistently with one another. *See id.* at 14–15. Here, because federal constitutional concerns require redaction of the same material as does Wisconsin law, *see infra*, there is no inconsistency, and the law is not preempted. WEC also correctly notes that courts have held that Section 8(i) of the NVRA, 52

15

U.S.C. § 20507(i), the statute's public inspection provision, permits redaction. WEC Br. at 36.

Common Cause Intervenors write separately only to put a slightly finer point on the issue: redaction in certain circumstances, such as here, may in fact be constitutionally *required*. Courts must interpret the CRA's disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See United States v. Orona-Ibarra*, 831 F.3d 867, 876 (7th Cir. 2016) (applying "[t]he well-established canon of constitutional avoidance," which instructs that "[w]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter" (quoting *Jones v. United States*, 529 U.S. 848, 857 (2000))). As the Fourth Circuit has found, there are instances where failure to redact sensitive material would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted) (requiring redaction of social security numbers, which are "uniquely sensitive and vulnerable to abuse."). So special care must be afforded here, where exposure jeopardizes the "tradition of anonymity in the advocacy of political causes … best exemplified by the secret ballot, the hard-won right to vote one's conscience without fear of retaliation." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995). The personal, sensitive information of

16

millions of Wisconsin voters is at stake, such that redaction is required to avoid infringing on the fundamental right to vote.[14]

## IV. The United States' Motion to Compel should be denied because Plaintiff is not entitled to summary disposition of its CRA claim.

WEC correctly and comprehensively argues that Plaintiff's Motion to Compel should be denied in part because it is "procedurally improper," WEC Br. 43-45; this Court should not accept Plaintiff's appeal to a non-binding and anomalous case, *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962), in an attempt to make an end-run around the Federal Rules of Civil Procedure and the CRA's requirements. Common Cause Intervenors add only that since WEC filed its brief, the federal court in *Oregon* resolved the issue succinctly: "The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*." *Oregon*, 2026 WL 318402, at *8 (citing *United States v. Powell*, 379 U.S. 48 (1964)).

## V. This Court should dismiss this action with prejudice because any amendment would be futile.

"Under Rule 15, courts may deny an amendment for undue delay, bad faith, dilatory motive, prejudice, or futility." *Ind. Funeral Directors Ins. Tr. v. Trustmark*

---

[14] Even Plaintiff itself has stated on multiple occasions that the NVRA does not prohibit the States from redacting "uniquely sensitive information" when disclosing voting records. Ex. 2, Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27–28 (internal citations omitted); Ex. 3, Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found. v. Marks*, No. 23-1590 (3d Cir. Nov. 6, 2023), at 28 ("States may redact certain information before disclosing Section 8(i) records."); Ex. 4, Br. for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), 2011 WL 4947283, at *11, 25–26.

17

*Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003). Courts should deny leave to amend when "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Bernacchi v. First Chicago Ins. Co.*, 52 F.4th 324, 330 (7th Cir. 2022) (internal citations omitted).

This Court should join the courts in *Weber* and *Oregon* that both dismissed the United States' materially identical complaints with prejudice. *See Weber*, 2026 WL 118807, at *20; *Oregon*, 2026 WL 318402, at *12. Their rationales apply equally to this case. The court in *Weber* correctly held that—as Common Cause Intervenors argue here, *see supra* Argument Section II—amendment would be futile "[g]iven that the DOJ's request violates federal privacy laws," including the Privacy Act. *Weber*, 2026 WL 118807, at *20. For its part, the court in *Oregon* held "no allegations of additional facts . . . could cure the deficiencies identified in this Opinion" for several reasons—including that (1) Oregon already offered to provide the United States with the redacted voter file, which complies with the federal voting statutes, and (2) "no additional facts could cure . . . the deficiencies . . . plain on the face of" the demand letter that the United States sent to Oregon. *Oregon*, 2026 WL 318402, at *12. The same is true here. WEC offered the publicly available voter file to US DOJ on multiple occasions in its correspondence last year. *See* Ex. 2 to U.S. Mot. to Compel, Letter of Wis. Elections Comm'n to Acting Chief Maureen Riordan at 4 (July 2, 2025), Dkt. 3-1; Ex. 4 to U.S. Mot. to Compel, Letter of Wis. Elections Comm'n to Eric Neff at 1 (Dec. 18, 2025), Dkt. 3-1. And as the WEC

18

correctly notes in its brief, US DOJ's demand letter to Wisconsin was facially defective and thus cannot be cured. *See* WEC Br. at 28–31.

Because any amendment would be futile, this Court should dismiss this case with prejudice.

## CONCLUSION

For all these reasons, and the reasons detailed in WEC's opening brief, the United States' Motion to Compel should be denied and the Complaint dismissed.

Dated: February 12, 2026

Respectfully submitted,

Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

*/s/ Ryan V. Cox          .*
Ryan V. Cox, SBN 1140899
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
Fax: 414-272-0182
rcox@aclu-wi.org

Douglas M. Poland, SBN 1055189
Scott B. Thompson, SBN 1098161
Law Forward, Inc.
222 W. Washington Ave., Ste. 680
Madison, WI 53703
dpoland@lawforward.org
sthompson@lawforward.org
608.283.9822

*Attorneys for Proposed Intervenors*
*Common Cause, Melissa Adams, Amanda*
*Makulec, and Jaime Riefer*

19